## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| SOFIA MALACHOWSKY, | Case No. _____ |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| v. | |
| VAIL RESORTS, INC. and THE VAIL CORPORATION d/b/a VAIL RESORTS MANAGEMENT COMPANY, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

1.      Defendants sell ski passes that allow purchasers access to various resorts, with the passes ranging from single-day access to season-long. The passes, once purchased, give skiers the right to access the resorts and ski on the day(s) of their choosing. In exchange, Defendants received substantial up-front revenue from skiers.

2.      Defendants sold these passes for the 2019-2020 winter ski season. While the passes were generally used as expected until March, the ski resorts at which the passes were used were closed by mid-March in connection with the COVID-19 pandemic. The resorts have stayed closed ever since, effectively ending the ski season months earlier than expected and eliminating the utility of the passes from the day of the closure onward.

3.      Although Defendants charged skiers for the ski passes, which entailed future access to various ski resorts, Defendants issued no refunds upon the closure of the resorts. Instead, even though skiers could no longer use the passes, Defendants have

chosen to keep the money. Plaintiff purchased one of the passes at issue and, on behalf of herself and others similarly situated, seeks to compel Defendants to provide appropriate remuneration.

## THE PARTIES

4.      Plaintiff Sofia Malachowsky is a citizen and resident of Incline Village, Nevada. Ms. Malachowsky spent over $500 on an Epic Adult Tahoe Local Pass for the 2019-2020 ski season and has been precluded from using the pass since mid-March 2020. Ms. Malachowsky has received no refund for her purchase of the pass.

5.      Defendant Vail Resorts, Inc., is a Delaware corporation, with its principal place of business in Broomfield, Colorado.

6.      Defendant The Vail Corporation d/b/a Vail Resorts Management Company, is a Colorado corporation, with its principal place of business in Broomfield, Colorado. The Vail Corporation is a wholly-owned subsidiary of Vail Resorts, Inc. Throughout this complaint Vail Resorts, Inc., and The Vail Corporation d/b/a Vail Resorts Management are referred to collectively as Vail or the Vail Defendants.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Defendants and more than two-thirds of the proposed plaintiff class are citizens of different states.

8.      This Court may exercise jurisdiction over Defendants because they maintain their headquarters in Colorado; they are registered to conduct business in Colorado; they have sufficient minimum contacts in Colorado; and they intentionally avail themselves of the markets within Colorado through the promotion, sale, and

marketing of the ski passes at issue in this case, thus rendering the exercise of jurisdiction by this Court proper and necessary.

9.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are headquartered in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Epic Ski Passes

10.     Vail operates 37 ski resorts, including 33 in the United States. These include resorts in California, Utah, and Colorado, including resorts called Vail, Park City, Heavenly, and Northstar.

11.     Vail sells a variety of ski passes for its resorts. These passes range from single-day passes (which allow the purchasers to gain access to a ski resort for a day of their choosing) to multiday and season-long passes (which can allow purchasers to access a variety of resorts at locations and on days of their choosing throughout the ski season).

12.     In the past, skiers often bought lift tickets for one day (or a few days) at a time, for a single location. In recent years, there has been a shift toward ski passes offering access to multiple resorts over an entire ski season.  For example, in its March 9, 2020 report to investors, Vail wrote that the growing pass program secured customer commitments in advance of the ski season, resulting in a "more stabilized stream" of revenue than if they relied on day-of lift ticket purchases. In exchange, customers receive larger scale access (throughout the ski season and at multiple resorts) to ski when and where they choose.

13.     Vail markets its ski passes under the "Epic Pass" brand name.

14.     Epic ski passes come in product tiers and frequently come with incentives for purchasing the passes early in the year and committing to renew the pass for subsequent ski seasons. For example, Vail offered a discount of $30 on all Epic Pass tiers for the 2019-2020 ski season if consumers bought the passes before September 2, 2019. And the automatic renewal option for the Epic Pass came with the offer of discounted prices.

15.     The highest-priced Epic pass, known simply as the Epic Pass, was priced for adults (without discounts) at $969.

16.     The Epic Pass was to provide access to Vail Defendants' resorts of Vail, Whistler Blackcomb, Keystone, Northstar, Stowe, Breckenridge, Park City, Heavenly, Kirkwood, Crested Butte, and Stevens Pass. It was also to provide access to partner resorts, including seven days at Telluride and several days at certain international locations.

17.     The Epic ski pass that is one step less expensive than those discussed above is known as the Epic Local Pass.

18.     For the 2019-2020 ski season, the Epic Local Pass was $719 (without discounts). The Epic Local Pass preserves "unlimited, unrestricted" access to 9 of the Vail Defendants' resorts, including Breckenridge, Stevens Pass, and Keystone; adds holiday restrictions to 5 other Vail resorts, including North Star, Stowe, Heavenly and Park City; caps access at 10 days combined (also with holiday restrictions) to 4 other Vail resorts, including Vail and Whistler Blackcomb; and offers fewer days at a shorter list of partner resorts.

19.     Vail also sold a combination of Epic branded ski passes for the 2019-2020 ski season that were regionally focused (e.g., for Tahoe ski resorts), resort-specific, and "daily" passes, which were for a specified number of days.

20.     Epic branded ski passes could be purchased in a number of locations, including online on websites controlled by Defendants. For example, Epic passes could be purchased on www.epicpass.com as well as on websites specific to Vail Defendant resorts, like www.vail.com.

21.     Defendants' websites promise "flexibility" in connection with these ski passes and tell customers they will generally be able to access various ski resorts throughout the ski season. The Epic Passes are marketed as providing "unprecedented flexibility," with the Vail Defendants telling customers they will be able to access to Vail Defendant resorts "throughout" the ski season.

### The Resort Closures

22.     The COVID-19 pandemic reached the U.S. in early 2020 and many businesses closed as a result.

23.     In March 2020, Jared Polis, Governor of Colorado, issued a series of executive orders. Order D 2020 003 declared COVID-19 a disaster emergency. Subsequent orders (D 2020 004 and D 2020 06) ordered ski resorts to suspend operations.

24.     Vail announced on March 14, 2020, that it was closing its ski resorts on March 15, 2020. Vail's closure was initially for one week "to reassess [their] approach for the rest of the season," but ultimately Vail ski resorts did not reopen during the 2019-2020 ski season.

25.     This closure fell within the 2019-2020 ski season, which Vail sold passes for as "19/20" or "2019/20" passes. The ski season in North America begins towards the end of one calendar year and ends during the subsequent calendar year. The exact timing and duration of the U.S. ski season varies each year, depending on factors such as weather, snowfall, and geographic location. In its March 9, 2020 10-Q filing with the

SEC, Vail told investors that the "peak operating seasons" in North America are "primarily from mid-November through mid-April."

26.    Spring skiing in March and April is popular for several reasons: many school spring breaks fall in those months, ski resorts have increasingly used artificial snowmaking to augment the ski season, and global weather trends have shifted the U.S. ski season to start later and end later over time.

27.    At the time of Defendants' closure of the ski resorts, many skiers had already purchased the various ski passes discussed above, which were to provide continued access to various ski resorts well beyond the mid-March closures. Defendants had accepted payment for those ski passes in exchange for the promise to provide access to the ski resorts through the natural end of the 2019-2020 ski season, which was still many weeks away on the date of the closures.

28.    Vail has refused to provide refunds to the purchasers of the Epic passes and other ski passes discussed above. Defendants have withheld those refunds despite being unable to contest the fact that they received payment in exchange for providing additional ski opportunities during the 2019-2020 ski season which they were not providing.

29.    At the time of the ski resort closures, Defendants acknowledged the closures constituted a premature and unnatural end to the 2019-2020 ski season. Vail issued a statement initially saying that they were suspending skiing but would later reassess whether skiing might resume "for the rest of the season." Vail issued a subsequent statement that stated it was "incredibly disappointing … to mark the end of the season so early."   Vail ultimately acknowledged that "the resort closures in mid-March impact[ed] about 20% of the core season" and that many customers had not used

their season pass at all "because we recognize that some of you were waiting until spring to use your pass."

30.     In recognition that they had accepted payment from their customers in exchange for a promise to provide access to ski resorts for the 2019-2020 ski season but had not in fact provided that benefit, Defendants initially suggested they would be providing refunds of ski-pass purchase funds. Vail said on March 17, 2020, that "Guests can process refunds and credits on pre-purchased lift tickets, lodging, ski and ride school, equipment rentals and more, subject to applicable terms and conditions, using an online form that will be available later today on the Company's resort websites."

31.     Vail reversed course, however, and declined to refund the money they had been paid for skiing for the remainder of the 2019-2020 ski season. Instead, well after announcing the ski resorts' closure, Defendants announced that rather than refunding that money, Defendants would merely be offering partial credits toward Epic ski passes for skiing during the 2020-2021 ski season.

32.     To accept these credits, skiers thus had to provide Defendants still more money for future skiing, while accepting the risk that COVID-related restrictions would continue to impact skiing in the 2020-2021 ski season. As many of Defendants' customers have stated, these credits do not provide the refunds owed and offer inadequate compensation for the loss of skiing opportunity during the 2019-2020 ski season:

> We purchased four day passes for our family of five, a total of $1800. You closed the slopes the day we were to arrive. So now we lose 20% of the value (due to no fault of our own) And our only option is credit. We live in Florida. What if we don't want to go skiing next year for spring break?! You are the only company that has not given us 100% of our money back.

It would be more fair if you offered 80% cash back for day passes or 100% credit towards passes for next year!![1]

SO UNFAIR! I am in agreement with the many comments you are getting from people who did not use their pass at all!! And I don't think you get our frustration. I had the same experience- had passes (with insurance!) for my family of 5 to come skiing on Spring Break. While I 100% understand your reason for closing please try to understand why we would want 100% of something we did not use returned!!! We drove 8 hours before we heard the mountain closed so turned around and drove 8 hours back. I basically went on a 16 hour road trip from my house to my freaking house!!!! The house we had rented for the week returned 100% of our payment because WE DID NOT USE IT! And I guess they apparently understand the right thing to do. I really have no idea how you can in good conscience make this decision. In these difficult times when so many are trying to help each other out your company is obviously doing the opposite. I really don't care what you have historically done! So you can save copying and pasting that same answer for me. Seems like the only people actually okay with this decision are the people who probably got to use their passes at least ONCE! Completely ridiculous![2]

We purchased 4, EPIC 4 Day passes for my family to ski at Vail over Spring Break.  This was a special trip, as my son was graduating High School in May.  This was going to be our last family vacation together.  We literally had driven all day and had just arrived in Denver when they closed the slopes.  We live in Oklahoma, so skiing is a planned vacation, not a weekend event.  Vail Resorts is only offering 80% credit for next year.  It is easily verifiable that none of the 4 days were ever used and a credit for next season is of no value to us, since we can't go skiing next year.  I realize these are strange times, but every other company provided a full and immediate refund.  This includes the Lodge at Lionshead,

---

[1] Jennifer Slosman Beck, Comment, Facebook (April 27, 2020, 7:57 AM), https://www.facebook.com/epicpass/posts/3016765685035808?comment_id=3016849 268360783&__tn__=R.

[2] Tara Hess, Comment, Facebook (May 1, 2020, 9:01 PM), https://www.facebook.com/epicpass/posts/3016765685035808?comment_id=3027474 630631580.

Snowmobiling, Dog sledding, etc.  It doesn't make sense to me that the only company not offering a full refund is Vail Resorts.[3]

I am completely disappointed in the way Epic Pass is handling their cancellation policy during COVID -19. We live in Atlanta and purchased our epic passes back in November. We arrived at Beaver Creek Ski Resort on March 14th and were bummed to learn that the ski resort would be closed the rest of the season when we arrived. Christy Sports Ski Rental refunded our rentals with no problem and were empathetic to the situation. However, even during this worldwide pandemic, Epic Pass has refused to refund our passes. I am disappointed and shocked in the lack of care we have received from Epic Pass. They should be ashamed of the way they do business and the lack of respect for people during this time. Hotels and airlines have been more than gracious in refunding customers, but Epic Pass is purely just trying to make a profit out of this horrible situation.[4]

## CLASS ACTION ALLEGATIONS

33.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and the following proposed class:

*All persons in the United States who purchased a 2019-20 season Epic Pass, Epic Local Pass, or other Epic Pass, who had days remaining for use as of March 15, 2020.*

34.     Excluded from the proposed classes are Defendants; any affiliate, parent, or subsidiary of any Defendant; any entity in which any Defendant has a controlling interest; any officer, director, or employee of any Defendant; any successor or assign of any Defendant; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff.

---

[3] Vance M., Review, Yelp (May 26, 2020), https://www.yelp.com/not_recommended_reviews/epic-pass-vail.
[4] Alexandra B., Review, Yelp (April 26, 2020), https://www.yelp.com/not_recommended_reviews/epic-pass-vail.

35.     The above proposed class definitions suffice because they use objective characteristics; class membership turns on objective criteria including whether someone bought an Epic ski pass. Documents identifying such persons are either in Defendants' possession or can be produced by class members at an appropriate time.

36.     **Numerosity**: Defendants sold thousands of the ski passes at issue. Members of the proposed class are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

37.     **Commonality and Predominance**: Common questions of law and fact exist as to all proposed members of the class and predominate over questions affecting only individual class members. These common questions include:

     a.  Whether Defendants are in breach of their contractual obligations;

     b.  Whether Defendants are contractually obligated to refund a portion of class members' ski-pass purchases;

     c.  Whether Defendants have breached their contractual duties of good faith and fair dealing; and

     d.  Whether Defendants are obligated, under principles of equity and good conscience, to refund a portion of class members' ski-pass purchases.

38.     **Typicality**: Plaintiff's claims are typical of those asserted by the proposed classes, as Plaintiff and class members were similarly affected by Defendants' decision to stop refuse to provide refunds in connection with the closure of the ski resorts at issue, and seek to recover a refund.

39.     **Adequacy**: Plaintiff will fairly and adequately protect the interests of the proposed classes. Plaintiff's interests do not conflict with the classes' interests, as both seek to recover refunds in connection with ski-resort closures from Defendants, and

Plaintiff has retained counsel experienced in complex class litigation to represent class members' interests.

40.   **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendants have taken money that rightfully belongs to thousands of consumers, and only through collective action can that wrong be fully remedied.

41.   **Injunctive Relief**: Defendants' decision to not provide refunds for closed ski resorts in the middle of a global pandemic was an action that applied generally to the entire class, such that final injunctive relief or corresponding declaratory relief would be appropriate respecting the class as a whole.

## FIRST CAUSE OF ACTION

### Breach of contract

42.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

43.   Defendants offered ski passes for sale to consumers to allow them to gain access to various ski resorts on the days of their choosing.

44.   Plaintiff and class members accepted Defendants' offer by purchasing passes to gain access to those resorts.

45.   Defendants breached their contractual obligations by both closing the resorts and refusing to provide refunds to Plaintiff and class members after doing so.

46.   As a result, Plaintiff and class members have suffered damages, including loss of the use of the money they spent on the ski passes.

## SECOND CAUSE OF ACTION

### Breach of implied covenant of good faith and fair dealing

47.   Plaintiff re-alleges the paragraphs above as if fully set forth herein.

48.     As an alternative to the first cause of action's allegations, Plaintiff and class members allege Defendants breached the implied covenant of good faith and fair dealing.

49.     Defendants offered ski passes for sale to consumers to allow them to gain access to various ski resorts on the days of their choosing.

50.     Plaintiff and class members accepted Defendants' offer by purchasing passes to gain access to those resorts.

51.     The agreement between Defendants, on the one hand, and Plaintiff and class members, on the other, afforded Defendants discretion with respect to the operation and temporary closure of the ski resorts and allowing Plaintiff and class members access to all or some part of those resorts during the ski season.

52.     Defendants breached the implied covenant of good faith and fair dealing by using their discretion to act dishonestly and to act outside of accepted commercial practices to deprive Plaintiff and class members the benefit of the contract, including by declining to refund ski-pass revenues even after closing the resorts for which the ski passes were purchased to provide access. In doing so, Defendants engaged in arbitrary and unreasonable conduct that prevents Plaintiff and class members from receiving the reasonable expectations of the contract.

53.     As a result, Plaintiff and class members have suffered damages, including loss of the use of the money they spent on the ski passes.

## THIRD CAUSE OF ACTION

### Money had and received

54.     Plaintiff re-alleges the paragraphs above as if fully set forth herein.

55.     As an alternative to the first and second cause of action's allegations, and without intending to make an election of remedies, Plaintiff and class members seek restitution from Defendants for money had and received.

56.     Defendants received money from and on behalf of Plaintiff and class members that was intended to be used for their benefit.

57.     Defendants did not use the money received from Plaintiff and class members for their benefit and have not returned the money to them.

58.     As a matter of equity and good conscience, that money should be returned to Plaintiff and the classes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the proposed class, respectfully requests the following relief:

A.     A determination this action may be maintained as a class action;

B.     An award of damages and restitution;

C.     Appropriate injunctive and equitable relief sufficient to correct the harm caused by Defendants' actions and prevent it from continuing to capitalize on its unlawful practices;

D.     Pre-judgment interest and post-judgment interest, as provided by law;

E.     Attorneys' fees and expenses, including expert fees and costs; and

F.     Any and all other legal and equitable relief that the Court may find appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for all claims so triable.

13

Dated:  May 28, 2020                    Respectfully submitted,

                                        **GIBBS LAW GROUP LLP**

                                        By: _/s/ Steven M. Tindall_

                                        Eric H. Gibbs
                                        Steven M. Tindall
                                        Karen Barth Menzies
                                        David Stein
                                        Steve Lopez
                                        505 14th Street, Suite 1110
                                        Oakland, CA 94612
                                        Telephone: (510) 350-9700
                                        Facsimile: (510) 350-9701
                                        ehg@classlawgroup.com
                                        smt@classlawgroup.com
                                        kbm@classlawgroup.com
                                        ds@classlawgroup.com
                                        sal@classlawgroup.com

                                        _Attorneys for Plaintiffs_